Next case, Laura Sanchez v. Garland has been submitted on the briefs and record, so calling up for argument Martinez Diaz v. Garland When you're ready, counsel. Good morning. May it please the court. My name is Carlos Cruz, and I represent the petitioner. Your Honor, I might reserve three minutes for rebuttal. All right. I'd help you out, but keep your eye on the clock as well. Thank you, and I appreciate that. Your Honor, the B.A.'s decision should be reversed based on the following three reasons. First, the petitioner's right to due process in this case was violated. As the rap she used to determine or pre-terminate his application for cancellation of removal was unreliable, resulting in substantial prejudice. Second, substantial evidence not considered by the board. Would there be prejudice if the documents are inconclusive? Your Honor, that wouldn't lead to substantial prejudice because the burden is on the petitioner to establish that he was not convicted of that 1993 offense. The issue in this case is whether the use of that FBI rap sheet resulted in that substantial prejudice because the court found, in essence, through that document, the petitioner's evidence had not established by that preponderance of the evidence that he was, in fact, eligible for cancellation of removal. So it's important to look at the actual document the court considered in assessing whether or not that document was permissible. Right. He would have been eligible but for the San Diego conviction. Your Honor, he would have been eligible but for the allegation that he was convicted of that offense in San Diego in 1995. You mean the fact that it was listed in the rap sheet? Exactly, Your Honor. So when we look at the rap sheet in this case, we look to the many inaccuracies that are contained in this rap sheet. One primary inaccuracy is that the FBI rap sheet itself says that the FBI report is based on fingerprints and fingerprints only. The immigration judge herself says that in her decision in discrediting all the other evidence in this case regarding the petitioner's claim that he was not convicted. But if you look at the actual document itself, the entry for 1993, which is the entry at issue in this case, that entry says that no arrest received. No arrest received. So if there was no arrest received, no fingerprints were ever taken to show that this individual was arrested for this particular. But let me, I want to focus on precisely what the rap sheet says and doesn't say. Yes, Your Honor. Because I think we now all agree that there's something in the record that suggests that fingerprints weren't taken, the thing from the California DOJ. Yes, Your Honor. It does have a birth date that matches your client's, correct? Certainly. Yes, Your Honor. And it does have an alias, which, and this is what I want to ask you about, everybody seems to assume in this case was an alias used by your client. You don't seem to contest that. Your Honor, it seems that there was an alias attached to the petitioner. It doesn't, we don't know where that alias came from because there's no reference to any other offense where that alias was used. The person who was convicted is listed in the rap sheet under not your client's name, but another name. Yes, Your Honor. So both the FBI rap sheet and the DOJ rap sheet provide the name under which the individual was arrested and then convicted in 1995. And that was not your client's name. That is not his name, Your Honor. But the name does appear on the DOJ rap sheet as a soft hit criteria and also is used in the FBI rap sheet. No, I'm just trying to figure out what's in the record here. And so then you go, your side goes to the San Diego County Superior Court and you get some sort of document that says there's no record of a conviction of a person under the name on the rap sheet or under your client's name? Under both names, Your Honor. Under both your client's name and the name on the rap sheet. And the alias that was specifically listed in both the FBI rap sheet for that entry and it was also listed in the DOJ rap sheet as item number 11, which if you look at the first page of the DOJ rap sheet pertains to that name that was used when the individual was arrested and convicted for that offense. So what I'm trying to figure out is what evidence, if any, there is that your client used this name other than the rap sheet that says it's an alias of your client. There's absolutely no evidence because no other case in the FBI rap sheet or in the DOJ rap sheet have that name associated with the petitioner in this case. So that name appears in the rap sheet, but there's no other reference anywhere in the record, anywhere in this record, in both the FBI rap sheet offered by the government and the DOJ background check that associates my client, the petitioner, with that name. Somehow that name appears in the rap sheet, but there is no way of us knowing. So you're saying that the name appearing alone has no evidentiary significance or value? Your Honor, the name has value because it appears on the rap sheet as a soft hit. And it also appears as the... Right, so it's a soft hit and the government wasn't satisfied because there were many, many other aliases they wanted that run. Let me ask you this. As I understand it, at the time of the hearing, you wanted to get a continuance to sort of run down these other issues to get a judicial clearance from San Diego as well. Have those efforts continued since that time? Those efforts have continued, Your Honor, but San Diego has only been able to offer a letter that says that there is absolutely no record for Mr. Martinez with his real name and the alias that appears particularly for this particular offense. Well, that's what you got and presented at the time of the hearing. Yes, Your Honor. But have you either gotten a judicial clearance or get a similar letter for all the other aliases that are associated with the petitioner? So the immediate answer is no, Your Honor, and that's for a couple of reasons, and if I may. The first reason is that the evidence at this point will be considered untimely on appeal to the board. You can file a motion to reopen. I think the IJ indicated that, okay, if you run down the leads in San Diego, if you can get a judicial clearance, then you file a motion to reopen. Certainly, Your Honor. So in that case, we either have to file an appeal within 30 days to the BIA or waive the appeal and file that motion within 90 days to the immigration judge, risking the opportunity that the petitioner had to submit their appeal and further stay his removal from the United States. It's something that's critically important to the petitioner as he had been removed from the United States previously on three prior occasions. Your Honor, the one thing that I wanted to say that's important, based on the point that you make about the alias, yes, there is information in the record about the petitioner wanting to get a clearance letter for each and every alias listed in the DOJ rap sheet. They'll say that, and counsel does provide that that effort should be made, and the government also agrees that the effort should be made. My point to the court is that that wasn't necessary, and it wasn't necessary because the entry for 1993 specifically provides the name that was used when he was arrested. So there are no other entries for the other alias? Absolutely. Let me ask you a question. I want to ask your friend the same question. If the government just came in and said, we're not certain, but there seems to be some information that this person was convicted of a disqualifying crime, here's what we've got. Yes, Your Honor. It's the FBI rap sheet. It's not conclusive, but it's enough evidence for us to shift the burden to you. Certainly. Do you agree with that? Absolutely, I do, yes. So now the question is, and I think the IJ says, well, the rap sheet's inconclusive. So you've got to now demonstrate that you're not, you don't have a disqualifying conviction. This doesn't say that the FBI rap sheet's inconclusive. The judge says that the FBI is based on fingerprints, and therefore, regrettably. Let's assume for a moment that we view it as just enough to trigger your obligation to respond. Your response is to produce the document that Judge Wynn is talking about, which is you've got something from the San Diego court that says there's no showing here, no, nothing in our records, showing a conviction of this person at this time. Yes, Your Honor. What do we do with that? Do we find that no reasonable finder of fact could find you were the person, or do we find that it's evidence you submitted, but the IJ could reach a differing conclusion? No, Your Honor, I don't think you get that far. I think you look at the cases, Smith v. Garland, Rojas v. Garcia, that says that we look to the actual document that created that doubt about Petitioner's burden, about whether or not he was convicted without offense. And it says clearly there that you look to see if there are reasons to cast doubt on the FBI rap sheet to decide whether or not that was a document that was sufficiently reliable. I think you're trying to answer my question, so I want to be clear with the answer. Your answer is that as long as you can cast doubt on the accuracy of the FBI rap sheet, then the conviction can't be treated as disqualifying, or do you have to disprove the evidence? No, Your Honor. So I think the first issue, of course, is whether or not we can cast doubt on the FBI rap sheet. And there are several reasons here that you've noted yourself to cast doubt on the FBI rap sheet, the inaccuracies, the DOJ rap sheet, the letter from San Diego, and even the credible testimony. But at the end of the day, yes, Petitioner bears the burden of proving that he was not convicted without offense. But this takes me to the point that I think is really critically important. The government itself concedes that the testimony alone in this case could have been sufficient. Credible testimony could have been sufficient for Petitioner to meet his burden of establishing that he was not convicted of this offense. He testified that he had never been in San Diego. He had never been arrested in San Diego for that offense. And when you take his credible testimony with the certified letter from the Superior Court and the DOJ background, and then, of course, you cast this doubt on the FBI rap sheet, which was clearly inaccurate because it also contained other entries that did not pertain to this Petitioner, Petitioner submits that he has satisfied his burden. Well, I'm trying to... This is where I still think we're missing each other. I'm not sure I disagree with you, but we're missing each other. Is it a legal burden or a factual burden? In other words, we're viewing the IJ's decision that you hadn't discharged the burden. So are we saying the evidence was such that no reasonable IJ could reach that conclusion, or are we saying as a matter of law... Our position is as a matter of law. The analysis in this case is unfairly prejudicial to the Petitioner because if you look at the facts, if you consider this case from a factual standpoint, like in the Ochoa case, the Patel decision, and we say that the immigration judge simply made an error in making that factual determination, this Court is barred from reviewing that decision. That's why I'm asking the question. And I understand that, Your Honor, and this is why I'm providing you with this answer, that this has to do with a due process challenge. And even in the Ochoa case... Or it would be a violation of due process on this evidence for the IJ to have reached that conclusion. To have relied on this particular document in finding the Petitioner had failed to meet his burden. So the judge basically relies on this FBI rap sheet entirely in deciding that Petitioner had failed to meet his burden despite the fact that she found him credible after he testified credibly, after she considered his demeanor, after she considered he never attempted to evade any questions. And despite that finding, and despite the DOJ rap sheet, and despite the fact that this particular entry is confirmed as one not being in the rap sheet, both for the FBI or the DOJ, as not one pertaining to fingerprints, clearly there was enough here for the immigration judge to find that Petitioner had met his burden. So in this case, if the immigration judge erroneously used this rap sheet to, in essence, find that Petitioner had not met his burden, the judge, in essence, violated his right to due process by relying on this document that was unreliable, which led to a substantially unfair result resulting in substantial prejudice, because but for this finding on the part of the immigration judge, Petitioner would have been eligible. She found in this case that he had met the 10 years continuous physical presence requirement, that he has the requisite good moral character for that 10-year period, that his mother is a U.S. citizen, mom and dad's a legal resident, he has qualifying relatives for the required hardship that is needed in this case, but for this offense, unfortunately, he was not eligible for cancellation of removal. That is clear substantial prejudice in this case because it deprived Petitioner of his one true application before the court to seek relief as a result of living here in this country as he was 15 years old, being a paraplegic man, being dependent solely on his parents, who are elderly themselves, to care for him as a result of that condition. And so prejudice, substantial prejudice is here, and the due process violation committed by the immigration judge should not be ignored. So what are you asking us to do, send it back? Absolutely, Your Honor. And what will the I.J. then do? Your Honor, the immigration judge in this court finds, pursuant to the Suaté-Orellana case, that the government has waived and forfeited its right to that claims processing rule under Section 231A.5 that the court has to then consider and provide Petitioner with a full hearing on his cancellation of removal application. Well, why should we find anything about their inability to cite the claims processing rule? We can certainly find that it's not in front of us, but do we have to find that they've waived their right in the agency to assert it if we send it back? I'm not sure why we should do that. Because, Your Honor, they have waived and forfeited. Here's the problem with your question and what's going to happen with the case. But don't you have to raise that argument in the agency, not to us? But the government has raised it for the first time on appeal to the court. If we send it back, you have a chance to make that argument below. And whether it wins or not, I don't think that's up to us. The agency would take a look at it. I know you wanted to save time, so I want to give you that reminder. And I appreciate that. Thank you very much, Your Honor. Thank you, Judge Wynn. And may it please the court, Joseph Hardy for the Attorney General. This case just got very confused on oral argument there. The argument that petitioner raised with respect to cancellation of removal is not that the immigration judge denied due process by considering that FBI rapture. If you look at the brief, the due process argument is that the board failed to consider the two arguments that petitioner raised on pages 12... However they're phrased, let me tell you what... Those are two completely different arguments, Judge. They may be different arguments, but here's what troubles me. If this were a criminal case, and he was charged with having committed this previous crime, and the evidence was the evidence that we have in this case, we toss out the conviction in a minute. You've got a rap sheet that we know is not fingerprint-based, because there's evidence in the record that it's not. The San Diego Court says we've got no record of this conviction, and Mr. Martinez testifies that I'm not that person, and the IJ found it incredible. Under these circumstances, whether you call it due process or an irrational decision, how can we find that he didn't... What more is he supposed to do? Let me say this quickly to get to the point that I was trying to make. There's a difference between what petitioner raised before the board and what petitioner is raising to the court. I understand that argument. I specifically... You get that, right? Let's assume for a moment... Put that argument aside. Let me finish. What troubles me in this case is not the specificity of arguments or the way they're phrased. It's just when I look at this, you've got almost nothing, and they've got a lot. And so I'm trying to figure out what to do with this. This is what we do with it. You're factually incorrect as to the FBI rap sheet. The FBI rap sheet itself is fingerprint matched. That's what the immigration specifically found. That's why the immigration judge was willing to consider the FBI rap sheet. Did the immigration judge ignore the thing from the Department of Justice in California that said we don't have fingerprints, and this is not... The information we sent them is not fingerprint based? There's no such evidence that says we don't have fingerprints. The only document... Look at page 300 of the record, right? Let's go to page 300 of the record. That's the document from the San Diego court that he got in, I believe, June 19th of 2023. Now, what about the thing from the California DOJ? The California DOJ? That's the... That's the document that says no fingerprint... That it wasn't fingerprint matched. We're talking about the FBI rap sheet, right? That's been the whole crux of his case. You have to keep in mind... You're talking about a criminal case. This is an immigration civil case. You're not talking about removability. You're in the relief context, right? You've got to keep in mind Pareto versus Garland. The Supreme Court says that in this context, under the regulation, 8 CFR section 1240.8 D, petitioner bears the burden of establishing his eligibility for relief. If the evidence establishes that one of the grounds of ineligibility for the relief, in this case cancellation of removal, that it may apply, the burden shifts to petitioner to establish conclusive... Look, I understand all that, and I'm still not sure we're engaging with each other on this. Take out everything else. You've got a rap sheet that says this gentleman was convicted in San Diego on such and such a date of such a crime. Which rap sheet? I'm sorry. Which rap sheet are we referring to? The FBI rap sheet. The FBI rap sheet. Okay. On such and such a date there was a person convicted on such and such a date of a crime whose name is not this person's name. Yes. The FBI rap sheet says, but it's one of his aliases. Okay. This person then goes to the San Diego court and says there isn't any such conviction of the person under the rap sheet name on that date. It does not say that. What does it say? I don't get it. Look at page 300 of the record, Judge Irwin. Tell me what it says. It specifically says look at page 300 of the record. I am. It specifically says that no record was found, but it specifically notes that they only conducted, please note that only a criminal search of our electronic records was performed. Mind you, this was the San Diego Municipal Court, which has since been dissolved and been subsumed under the San Diego Court. Okay, but they've got something that says we've looked and we can't find it. It may not be conclusive. And then he testifies that I've never been there or convicted of the crime. And is he right in saying, is counsel right in saying that the IJ finds him credible? I think, and respectfully, I think you're missing... I may be missing lots of things, but you still have to answer my question. Let me try to get you there. Well, let me answer the question yes or no. Does the IJ find him credible? Well, I think that's... Finding him credible doesn't mean that he meets his burden of proof of establishing... I'm not arguing... You maintain all legal arguments. You're not waiving any legal... I'm just trying to get a factual determination made. The IJ does say I find his testimony credible. She does. Okay, so now we have somebody who credibly testifies that he's not been there and was never convicted of it, and a record which is not conclusive doesn't support the FBI rap sheet. Why isn't that enough? Judge Horwitz, because you have to consider the burden... Overall, you've got to consider the burden of proof. The burden of proof in establishing eligibility... Let me ask this another way, counsel, because I think we're all kind of struggling, puzzling over the same area. He says, I've never been to San Diego. That's not me. It's not... Surprisingly, to some people, it's not that uncommon, actually, to have other people using your identity and then the rap sheet pops up. That's the whole thing of judicial clearance, right? That's what happened in L.A., and he got a judicial clearance saying that that's not the person. If setting aside the burden of proof, we recognize which he has on cancellation of removal, if you had to show that this is the individual connected with that conviction in San Diego, how would you do it? The way I would do it, Your Honor, is to look at the documents that you have in the record, or look at the facts that you have in the record. In this case, you have the FBI rap sheet. You're saying that standing alone shows that he's the person. It doesn't have to. You have to keep in mind the burden of proof. Right. I know you say ignore the burden of proof. Let me stop you right there, because I'm trying to get to, I think, an issue that Judge Hurwitz and I are both struggling with. Let's set aside the burden of proof. If you had to show that that's the person that was arrested in San Diego, you wouldn't be able to do it with just the FBI rap sheet, right? And so what you're saying is that first of all, if you concede that that's not enough, then your next argument is, but we don't have the burden. The burden is his, and he didn't get the judicial clearance. Do I have that right? I am not here telling you that the FBI rap sheet establishes anything. It's easier to say, let's ignore the burden of proof. You can't ignore it. I just want to make sure that we're on the same page in terms of the FBI rap sheet in this case not being enough. And so that's why the testimony has some significance, right? He's saying, I wasn't in San Diego. That wasn't me. I was never arrested for that offense. So then the question then becomes if the FBI rap sheet is not enough, is his testimony, which is presumed to be credible, enough to overcome whatever inconclusive evidentiary value that the FBI rap sheet really has? It is not, because the Supreme Court in Garland v. Ming Dai specifically recognizes that the burden of proof, and I know you want to say you want to get away from the burden of proof. What you're saying is that his testimony is not proof of anything. His testimony is not proof of anything. Why not? I'm not saying his testimony... A witness can take the stand and tell their story, and if they're believable, you can accept it. I'm not saying that his testimony is not anything. I'm saying that his testimony is not enough. It's not enough. The Supreme Court judge found that it was not enough in this case. And it's not enough because there's the FBI rap sheet. You have to, no, that's not the only thing. Okay, what else? It's because, as the Supreme Court pointed out... Oh, no, no, no. What else? Because it is credible... What I understand your argument to be is that I haven't even finished the argument. Well, but your statement's here, whatever it is you're making. I haven't even been able to finish the point where you said the testimony is not enough because the burden of proof statute, 8 U.S.C. 1229 A.C. 4B, specifically points out that in order to meet your burden of proof, a testimony has to be credible, it has to be persuasive, and it has to refer to specific facts in the record. What you're saying is, okay, it was credible, it's just not persuasive. It's because it's not persuasive, and that's what the immigration judge found in this case. And so the FBI rap sheet, the point that I've been trying to make is keeping the burden of proof in mind, the question here is not whether the FBI rap sheet versus his testimony. The regulation specifically points out that if a ground of ineligibility may apply, if the evidence establishes that a ground may apply, it shifts the burden to petitioner to conclusively establish that it doesn't apply. So he bears the burden to conclusively establish that he is not the person who was convicted of the 1995 offense. How does he conclusively establish that, other than by credibly testifying, the I.J. says I believe you, that you weren't in San Diego and you're not this person convicted? And producing, perhaps not a conclusive, but at least a record from the court that there's no record of this person being convicted on that date. What else is he supposed to do? Is he supposed to bring in the Bishop of San Diego to testify that he was with him in Hawaii on that day? So, for one, he could have persuasively testified, but I mean, you could have submitted, like, the document There's no finding of unpersuasiveness, it's just that I.J.'s analysis appears to be, okay, he testified, he's credible, so he is to be believed, but we've got this document here, it's inconclusive, so therefore I find that he hasn't You mean the FBI rap sheet? The FBI rap sheet. So this is what the immigration judge did in this case. No one doubts that there is a possibility that there is a 1995 conviction. No one doubts that there's a possibility he's the person convicted of that 1995 offense. And Petitioner, if you bear in mind, is the person who actually brought that conviction up. I'm with you so far, and then now the burden shifts to him. And he takes the stand and says wasn't me, wasn't there, never did it. I.J. says, I believe you, you're credible. He then produces a piece of documentary evidence. I can't get conclusive evidence from the Supreme Court because their records aren't terrific, but they can't find any record of this. So let's assume for a moment that he's actually telling the truth. What else is he supposed to do? What other thing can he do to demonstrate that it wasn't him, other than to testify credibly that it wasn't him, and to show that there's no record of it being him? I think what you're bringing up is exactly what the Supreme Court, is the policy concern that the Supreme Court addressed in Ming Dai. And it was actually brought up by the dissent in that case. And the majority in that case point out, we recognize that states often, as California as any other state, may not have the best record keeping with respect to and bear in mind that this is a misdemeanor offense, right? So I agree with you that the absence of the record enough is not enough to meet his burden. But I'm still struggling with this, and I'm still not sure I've heard your response to it. He says, he takes the stand and says, this wasn't me. Never been in that city. And the IJ, as opposed to saying, I don't believe you, says, I find you credible. So, under those circumstances, if he doesn't meet his burden of proof with that, with those two pieces of evidence, I'm not sure how he could ever meet his burden of proof. And that may well be the... Then wouldn't it violate due process if it's a burden of proof that you could never meet? Yes, that would not violate due process. I think that's something that the Supreme Court pointed out and paraded. It may well be that the person can never meet their burden. It may well be that the documents, I think California government code 68-152 C-7, this is a misdemeanor offense, right? After five years, California law allows for the court to destroy the records. Which is why I think the letter from the court isn't conclusive. But, what I'm still struggling with in this case is the IJ says, I believe your testimony. And so, we have a case where the IJ believes his testimony that it's not him. And he wasn't there, and yet you're saying he didn't meet his burden. And I'm trying to figure out whether anybody could ever meet a burden. Credibility doesn't go to whether the person is... whether what the person says is the truth. The credibility is simply, the IJ finds him credible. I believe you subjectively believe that you were not the person convicted of that 1995 offense. The Supreme Court talks about that in Ming Dai. That doesn't mean that what you're saying is true. Mind you, he says that he has never been to San Diego. We know that's a lie because he's been to San Diego multiple times. Each time he's come into the United States, he's come in through San Ysidro. He specifically says on page 143 of the record that... Excuse me. He says on page 143 of the record that his memory with respect to his 1995, 1990 offenses was not good. So the immigration judge has all this record. The immigration judge didn't have to find that what he's saying is objectively true. Let me ask you this before you run out of time completely. Can you briefly address the withholding of removal claim? Because the IJ did specifically find him to be exceptionally vulnerable. But then... So vulnerable, the immigration judge finds... Mind you, Petitioner does not challenge, as we point out in the brief, the no nexus finding. He argues that the two robberies he experienced at some point before September 1986 when he came into the country, that they did rise to persecution. And then to the extent that he says anything about nexus, he says that the immigration judge did not complete its analysis with respect to the cognizability of his group of Salvadoran paraplegic men. Assuming it's preserved. And so assuming that it's raised, what Petitioner claims that he fears, it's a few things, but they're interrelated, is if he goes back, he's afraid of discrimination. If he goes back, he's not going to have the physical assistance that he has from his parents, and that he's afraid that he's not going to have the level of medical care that he has here in the Los Angeles area. Well, that he would be vulnerable to being targeted for violence. And that he would be vulnerable, but he would have to point out that what may happen to him rises to the level of persecution. There's no indication that what happens is going to rise to the level of persecution. He simply says discrimination. And if you look, he says that if you look at the country conditions evidence, it says that the Salvadoran government does not have resources and controls in place in order for people with disabilities to be able to file a discrimination complaint. Not about a persecution complaint. He doesn't say that the government is the government, or that anyone is going to actually persecute him. He's just afraid of, ultimately, discrimination. And that's kind of the same thing with... Let me ask you this. There's a lot going on here in this case. Is there any other way in which you could resolve the matter? You know, like through mediation or something? There are issues here. This is just not like a slam dunk one way or the other. For one, I think there appears to be a misunderstanding as to the facts of this case. As to what was argued below, what was argued to the board, and what was argued to... Well, you don't have to make a commitment now. You don't have to make a commitment now. But as you know, we have a fairly robust mediation program. So perhaps after the hearing, the parties can confer and tell us... This is not going to be something that I'm going to push myself. But if the court wants to put this case in mediation to give petitioner time to reach out to DHS to see what they want to do, I do understand the equities in this case, given his circumstances. But if petitioner wants to do that, I'm perfectly fine to put it in mediation for a time and let him explore that avenue. I would point out that I suspect the reason why this was put in regular proceedings versus the DHS reinstating his order was they probably looked at his circumstances and said, well, let's give him an opportunity at a minimum to at least pursue withholding and protection under the CAT and full proceedings versus if it's a reinstatement case, then you've got to go through the truncated rules as far as reasonable fair proceedings. So he has had a measure of grace from DHS, but I'm certainly not against putting this... I know we're extending your time, but I do want to ask you about that. Let's assume that we don't treat on appeal in this petition your argument about the reinstated order, because it's not part of the record. It wasn't before the board. What happens under that reinstated order in your view? In other words, let's assume that we agreed with you that we should deny this petition for review. What then happens? There are three parts to the reinstate... There are three sections, I would say, to the reinstatement order. There's the part where DHS... The initial part where DHS reinstates the order, gives them the authority to reinstate the order. There's the part about the claims processing rule with respect to reopening. And then there's the part about the statutory eligibility for discretionary relief. As it applies to this case, that would be cancellation of removal. I do not doubt that DHS has the discretion to decide, like I said, whether to put someone in 240 proceedings or to reinstate under 240. What happens is DHS decides. DHS? Yes. DHS decides, but it may well be that it's a difference between what DHS can decide as far as which proceedings to put them in. The statute is the statute as far as what it says about a person's eligibility. Whatever proceedings he's placed in, can he then make his cancellation argument without respect to eligibility? Is he going to be ineligible because of this conviction? Don't be confused by what I'm saying. DHS has the discretion as far as which proceedings to put them in. The statute is what it says. It's about... Maybe I am confused. I'm still trying to figure out if we deny the petition, but there is a reinstated order of removal, what are his remedies under that circumstance? His remedies in terms of which type of relief are you talking about? Cancellation of removal in particular? Yeah, he wants to argue that if there's a reinstated order, I'd like it cancelled. So as we point out in the brief and the document, and the 28J letter, if he goes back, the statute says what it says. He's ineligible for cancellation of removal. That is not a claims processing rule. I fully agree that the reopening bar is a bar on the BIA's or the IJ's adjudicatory authority over reopening. Just answer my question. But the cancellation of removal part, the statute says what it says. He's ineligible for discretionary removal. So if we were to turn this down, the fact that there's a reinstated order would make no difference in his ability to get cancellation. So if we were to send this, if you were to send this back, and that's the whole point why I bring up the reinstatement bar at all. I'm not trying to get you here to decide that issue itself. I'm pointing out that if he goes back, no matter what, there's no amount of claims processing or adjudicatory. We understand, unless he can somehow get the documents from San Diego and do reopening as the IJ suggested, which he may never be able to do. He may never be able to do, and he may well be able to do, but he's going to go back and he's going to find that no matter what, he's ineligible for cancellation of removal. I don't fully understand why the IJ... Unless the agency buys his waiver argument, which is not in front of us right now. If they think that the discretionary or the bar on discretionary relief like the bar on reopening is a claims processing rule, but it may well be that even if it goes back, there's nothing that says that, I mean, this case is still pending, right? You're not talking about a law of the case type of situation. He can go back and DHS can raise the bar, the immigration judge, which to be honest he should have done while it was below. He should have raised the bar. That could have saved four years of... From August 2017 to September 2019, that could have saved two years of sending Mr. Cruz and company back to the San Diego court to try to get some documentation about that. We've taken you well over time. I appreciate your argument. Thank you. Your Honor, I'll tell you exactly what's going to happen if this case is remanded back to the BIA. If the case goes back to the BIA, the government has the option to try to seek to reinstate their prior removal order. Once they try to seek to reinstate their prior removal order, they're going to move to dismiss the NTA as improvidently issued, they're going to reinstate the order, and the petitioner will be removed. And this is why the decision in the Suato-Uriana case is so important because it deals with the claims processing rule, and it clearly says the government obviously, or that that rule can be waived and forfeited. It's very similar to what the BIA did in the Madera-Fernandez case, where the court found that unless the immigrant raised an objection to the defective NTA, another claims processing rule, that the immigrant, undocumented immigrant, often not represented by counsel or adequate counsel, waives and forfeits the right to make that claim processing rule. If we're going to hold an immigrant to that standard of raising a timely objection to that claims processing rule, then of course we should hold the government to the same standard of raising that claim processing rule in a timely fashion to promote the orderly progress of those removal proceedings. It would be utterly unjust and unfair to allow the government on remand to move to reinstate the proceedings and completely ignore the NTA that was issued in this case, now nine years ago. And so it leaves it at the mercy of DHS, and here's another point that I think is important that government fails to really explain to the court. There is a difference between 42B requirements for statutory eligibility and this claim processing rule of 1231A5. INA section 240AB provides four requirements. The 10 years good moral character, certain crimes cannot exist, and the required hardship. Those are the requirements. That's what the judge looked at in ordinary removal proceedings. That's what we looked to. The judge wasn't required to look at section 241A5, 231A5 under the AUSC. Wasn't required to do so. The government decided to file a charge to place this person back in ordinary proceedings. The judge has absolutely nothing to do with the way the government charges this case. And so once they decided to place the individual in those removal proceedings, all the court is looking at are the requirements at 42B1. And yes, this particular petitioner was credible. He said he wasn't there. The court believed him. But for the use of this unreliable FBI rap sheet, petitioner would have shown that he was not arrested or convicted of that offense in 1995. And for those reasons, Your Honor, I respectfully request a remand. Sorry to interrupt. You're over time, and I'm not sure that that is a winning issue for you because you do ultimately bear the burden. But given the many complicated issues in this case, it sounds like the government is willing to at least engage in a discussion to see if this case could be settled outside the court process. So I'm happy to hold our ruling, whatever they may be, for a couple of weeks, and the party should confer and file your positions regarding mediation with the court. Understood, Your Honor. And thank you for the opportunity. Thank you. Your Honor. Thank you. The matter is submitted. We thank you both for your arguments.
judges: PAEZ, NGUYEN, HURWITZ